UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MARK L. SHURTLEFF,                  )
                                    )
            Plaintiff,              )
                                    )
v.                                  ) Civil No. 10-2030 (EGS/DAR)
                                    )
UNITED STATES ENVIRONMENTAL         )
PROTECTION AGENCY,                  )
                                    )
            Defendant.              )
_____)


<u>MEMORANDUM OPINION</u>

        Plaintiff Mark L. Shurtleff, Attorney General of the State

of Utah, requested information from the defendant, the

Environmental Protection Agency ("EPA" or "Agency") under the

Freedom of Information Act ("FOIA").  In response to his

request, the EPA released some records to Plaintiff but withheld

other material.  Plaintiff challenges the withholding of this

material in this case, and he also alleges that the defendant

failed to adequately search for material responsive to his

request.

        Before the Court is the EPA's motion for summary judgment.

On March 8, 2012, the Court referred this matter to United

States Magistrate Judge Deborah A. Robinson for a report and

recommendation.  Magistrate Judge Robinson issued a report and

recommendation recommending that the motion be granted in part

and denied in part. More specifically, she recommended that the Court grant EPA's motion as to the adequacy of its search; its withholding of documents pursuant to Exemption 5's deliberative process privilege and attorney work product doctrine; and its withholding of documents pursuant to Exemption 6. She recommended the Court deny the motion for summary judgment as to one document withheld pursuant to Exemption 4 and documents withheld pursuant to Exemption 5's attorney-client privilege.

Both plaintiff and defendant timely filed objections to the Report and Recommendation. Plaintiff objects to all of the Magistrate Judge's recommendations in favor of EPA. Plaintiff also takes issue with certain segregability determinations and EPA's position that certain responsive documents were already publicly available, and he also raises various general objections to the Report and Recommendation. Pl.'s Objs. at 3-5. The EPA objects to the Magistrate Judge's recommendation that summary judgment be denied with respect to documents withheld under the attorney-client privilege.[1] In addition, after the objections had been fully briefed, Plaintiff filed a motion to supplement the summary judgment record.

---

[1] The EPA no longer seeks to withhold the single record it previously withheld under Exemption 4; in fact, it has released the record in full to Plaintiff. *See* Def.'s Reply in Support of Objs. at 5-6, Ex. B. Accordingly, the Exemption 4 issue is now moot. *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 19 (D.C. Cir. 1984).

Upon consideration of the Report and Recommendation, the objections thereto, the entire record in this case, and for the following reasons the Court accepts all of the Magistrate Judge's recommendations with the exception of the adequacy of the search. The Court accepts the Magistrate Judge's recommendations regarding the adequacy of the search with respect to certain portions of the FOIA request, but rejects the recommendation with respect to other portions. The Agency will be required to conduct another search for documents responsive to these portions of the request, or, in the alternative, to prove that its prior searches meet the adequacy standard. Moreover, in accordance with the Magistrate Judge's recommendation regarding the documents withheld under the attorney-client privilege, the EPA must either disclose the records withheld pursuant to that privilege or file supplemental submissions indicating in sufficient detail why withholding is proper. Finally, the Court will deny Plaintiff's Motion to Supplement the Record.

## I. BACKGROUND

The Court will not restate the full factual background of this case, which is set forth in the Report and Recommendation. *See* Report and Recommendation, Doc. No. 33 ("R&R") at 1-7. By way of very general overview, in 2009, the EPA promulgated the Endangerment Finding, which found that certain greenhouse gases

taken in combination endanger the public health and welfare.
Declaration of Elizabeth Craig ("Craig Decl.") ¶ 9. Among the
evidence considered, assessments conducted by the
Intergovernmental Panel on Climate Change ("IPCC") served as the
"primary basis supporting the Endangerment Finding." *Id.* ¶ 8.
The Endangerment Finding, in turn, serves as a basis for the
EPA's ability to regulate gas emission standards for motor
vehicles and for stationary sources emitting greenhouse gases.
*Id.* ¶¶ 9-10.

On July 6, 2010, Plaintiff submitted a FOIA request to the
EPA. The request expressed "concerns about [the Endangerment]
finding" and sought documents in order "to evaluate more fully
the process by which the EPA developed the [] Finding."
Complaint Ex. A. The request is extremely lengthy, consisting
of fourteen pages and thirty-seven subparts. *Id.* It is also
extremely broad, seeking, *inter alia*, all documents regarding
EPA's review of relevant IPCC assessments, all communications
between any EPA employee and any individual regarding same, and
all documents regarding EPA analysis of human behavior as the
cause of rising global temperatures. *Id.* at 2, 9.

The EPA conducted a search for records, and collected over
19,000 potentially responsive records. Craig Decl. ¶ 35. The
agency then produced responsive documents on a rolling basis
from October 2010 to April 2011; in addition, the agency made

five supplemental productions from June to October 2011. *Id.* ¶
40. Ultimately, approximately 12,987 records were deemed
responsive, of which approximately 8,200 were released in part,
4,445 in full, and 342 withheld in full. *Id.* ¶ 61.

Plaintiff filed this suit in November 2010. On May 25,
2011, this Court granted Defendant's Motion to Permit a Sample
*Vaughn* Index. Order, May 25, 2011. In accordance with the
Order, the EPA submitted a representative sample of records
withheld, including all records withheld in full, every seventy-
fifth record of the partially redacted records, and fifty
records of plaintiff's choosing. Craig Decl. ¶¶ 54-60.
Thereafter, in October 2011, the EPA filed its summary judgment
motion. (Doc. No. 21). The Magistrate Judge issued her Report
and Recommendations on the motion in September 2012, and the
parties filed their objections thereafter. The parties'
objections, as well as Plaintiff's Motion to Supplement the
Record, are ripe for review.

## II. LEGAL STANDARDS

### A. Summary Judgment in a FOIA Case

Summary judgment is granted when there is no genuine issue
of material fact and the movant is entitled to judgment as a
matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v.
Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of
Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining

whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citations omitted).

In considering a motion for summary judgment under the FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B) (2012). The court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v.*

*Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Agency affidavits or declarations must be "relatively detailed and non-conclusory." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal citation and quotation omitted).

An agency may discharge its obligations under FOIA by producing a *Vaughn* index, which is an affidavit that indexes and specifically describes withheld or redacted records and explains why each withheld record is exempt from disclosure. *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987). When a large number of responsive documents are involved, "[r]epresentative sampling is an appropriate procedure to test an agency's FOIA exemption claims." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991). "Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index. . . . If the sample is well-chosen, a court can, with some confidence, extrapolate its conclusions from the representative sample to a larger group of withheld materials." *Id.* (internal citations and quotation marks omitted).

## B. **Magistrate Judge Recommendations**

Pursuant to Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered her recommended disposition, a party may file specific written objections. The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "may accept, reject or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3). Proper objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." Local R. Civ. P. 72.3(b). As numerous courts have held, objections which merely rehash an argument presented and considered by the magistrate judge are not "properly objected to" and are therefore not entitled to de novo review. See *Morgan v. Astrue*, Case 08-2133, 2009 U.S. Dist. LEXIS 101092, *7-10 (E.D. Pa. Oct. 30, 2009) (collecting cases). Likewise, the Court need not consider cursory objections made only in a footnote. *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999); see also *Potter v. Dist. of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J. concurring) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (citation omitted).

## III. DISCUSSION

### A. **Adequacy of the Search**

The Magistrate Judge recommends granting summary judgment regarding the adequacy of EPA's search. R&R 21-25. Plaintiff objects on several grounds. His principal objection is that the search itself was not adequate because the EPA "failed to explain how [its] employees searched various paper and electronic files (*e.g.*, by file name, document description, a list of keywords for each request, or a viable method of electronic document retrieval)." Pl.'s Objs. at 6. Plaintiff argues that the defendant "never provided [its employees] instructions as to how to conduct the search beyond the text of the [FOIA] requests." *Id*. Defendant responds that it "provided detailed and non-conclusory information as to the electronic databases and hard copy filing systems that all relevant employees were asked to search, and identified the relevant employees deemed likely to have responsive records and the guidelines and instructions that the Agency issued regarding the searches they were to conduct." Def.'s Opp'n to Pl.'s Objs. ("Def.'s Opp'n") at 5.

This statement by the EPA is only partially correct. The agency provided detailed information as to the individuals likely to have information, explained the filing systems they were asked to search and the reasons those systems were

9

searched. *See, e.g.*, Craig Decl. ¶¶ 26, 30-32; Supplemental
Decl. of Elizabeth Craig ("Suppl. Craig Decl.") ¶¶ 13-15, 19.
However, the EPA only provided guidelines and instructions
regarding the search for records responsive to some subsections
of the FOIA request: specifically, the subsections which the
agency divided into three search "phases". *See, e.g.*, Craig
Decl. ¶¶ 29-32; Suppl. Craig Decl. ¶¶ 12-15, Exs. A-C. Other
subsections of the request, however, were not segregated into
search phases. Craig Decl. ¶¶ 27, 29; Suppl. Craig Decl. ¶ 17.
For several of these subsections, the EPA provided no
explanation beyond the names of the searchers and locations
being searched. For the reasons set forth below, the Court
finds that the search was adequate as to the subsections of the
request which were segregated into phases. The EPA has not,
however, demonstrated the search was adequate as to these other
subsections.[2]

---

[2] This discussion omits the five remaining subsections in the
FOIA request:  C, A(2)(a), A(4)(a), E(1)(a) and F(1)(c).  EPA
addressed these subsections in its October 18, 2010 letter to
Plaintiff, explaining that the EPA had no records responsive to
Request C because the EPA "did not develop new science to
support the Endangerment Finding."  Craig Decl. Ex. O.  The
Agency also explained that all documents responsive to the other
four subsections were publicly available within the official
record for the Endangerment Finding. *Id.*  Although Plaintiff
claims the Agency had an obligation to direct him to specific
responsive documents within the publicly available record, see
infra at III.D, he does not otherwise challenge the adequacy of
the search with respect to these five subsections.

To prevail on a motion for summary judgment regarding the adequacy of a search, an agency must show "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Id.* (internal citations omitted). The standard is one of reasonableness, and is "dependent upon the circumstances of the case." *Id.* To establish the adequacy of its search, an agency may rely on affidavits and declarations which are "relatively detailed and nonconclusory and . . . submitted in good faith." *Id.*

Upon receiving the FOIA request, the Agency held a number of internal planning meetings to determine what offices were likely to have responsive records, to identify individuals to coordinate the search in different offices, and to develop instructions for conducting the search. Craig Decl. ¶¶ 17, 23-25. Because the FOIA request was wide-ranging and extensive, the Agency then segregated many of the subsections of the request into three search phases. Phase One focused on information responsive to the following subsections of the FOIA request: A(1)(a),(b),(c), A(2)(b),(c), D(1)(c), and G. Suppl. Craig Decl. ¶ 13; Ex. A. Phase Two focused on subsections

B(1)(b),(c) and E(1)(b). *Id.* ¶ 14; Ex. B.   Phase Three focused

on subsections A(3)(a),(b),(c), F(1)(b) and H.  *Id.* ¶ 15; Ex. C.

For each phase, the EPA identified the individuals likely

to have responsive information.  The Agency then sent

instructions to those individuals setting forth search

parameters, including (1) the subsections of the FOIA request at

issue; (2) files to be searched; (3) time period covered by the

search; (4) substantive search instructions for individual

subsections, including, *inter alia*, reference to specific

studies, models, data sets, and working groups; reference to

communications with specific groups of individuals, internal and

external, some listed by name; and suggested search terms; and

(5) instructions on how to upload potentially responsive

documents for further review.  Suppl. Craig Decl. Exs. A–C.

The Court rejects Plaintiff's argument that the search was

inadequate as it relates to the subsections of his request which

were segregated into phases.  Plaintiff's claim that the agency

did not explain the methods used by EPA employees to identify

and search for records responsive to these subsections does not

withstand scrutiny.  As set forth above, the agency affidavits

"describe in . . . detail what records were searched, by whom,

and through what process." *Steinberg v. U.S. Dep't of Justice*,

23 F.3d 548, 552 (D.C. Cir. 1994).  Plaintiff's claim that the

phased instructions issued by the EPA are inadequate because

they only set forth specific search terms with respect to one subsection of the request is unpersuasive. Pl.'s Objs. at 7. A review of the instructions for all three phases reveals that the agency provided specific search parameters, instructing employees to restrict their searches by file type and by date, and to focus on specifically identified people as well as specifically identified data sets, climate change models, and working groups. Suppl. Craig Decl. ¶¶ A-C. It would elevate form over substance to deem a search inadequate because the phrase "search term" or "keyword" is not used, particularly in a situation such as this, where the request sought extensive records regarding an enormous scientific and regulatory undertaking, and required the participation of hundreds of people with diverse roles, backgrounds, and expertise within the agency. *See, e.g.*, *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch."); *see also Physicians for Human Rights v. U.S. Dep't of Defense*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("[I]n responding to a FOIA request, an agency is only held to a standard of reasonableness; as long as this standard is met, a

court need not quibble over every perceived inadequacy in an agency's response, however slight.")

Other subsections of the FOIA request, however, do not appear to have been included in the "phase" approach. Specifically, subsections A(4)(b),(c), A(5)(a),(b),(c),(d),(e), B(1)(a), D(1)(a),(b), E(2)(a) and (b), and F(1)(a) were not included in any of the phases. Craig Decl. ¶ 29; Suppl. Craig Decl. ¶ 17. It appears that eight members of the Agency's Climate Change Division ("CCD") who had worked on the Endangerment Finding searched their emails, calendar files, electronic files in their personal drives and on network drives, and paper files for responsive documents. Craig Decl. ¶¶ 26-27, 29; Suppl. Craig Decl. ¶ 17. No further details about these searches were provided to the Court.

The agency has failed to demonstrate the adequacy of the search with respect to these subsections of the FOIA request. The Craig Declarations state "[i]n addition to the three phases of search instructions, the CCD identified specific parts of the FOIA requests that if EPA did possess any responsive records, they would likely be found only within CCD's files." Suppl. Craig Decl. ¶ 17. "[A]s the three search phases were conducted," certain CCD staff members "led the effort to search records pertaining to" these additional subsections of the FOIA Request not included in the phases. Craig Decl. ¶ 29. The

Craig Declarations fall far short of the adequacy standards set forth by this Circuit, as they lack detail and make no reference to the types of searches, search terms, methods or processes used. Affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable the plaintiff to challenge the procedures utilized" are "too conclusory to justify a grant of summary judgment" as to the adequacy of the search. *People for the American Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 293 (D.D.C. 2007) (quoting *Weisberg*, 627 F.2d at 371). Therefore, the Court will require the EPA to conduct another search for documents responsive to subsections A(4)(b),(c), A(5)(a),(b),(c),(d),(e), B(1)(a), D(1)(a),(b), E(2)(a) and (b), and F(1)(a), or in the alternative, to prove that its prior searches meet the adequacy standard.

Plaintiff's other arguments that the search was inadequate are unpersuasive. As an initial matter, the Court rejects plaintiff's argument that defendant's delay in producing documents is evidence of bad faith or an inadequate search. Pl.'s Objs. at 3. Plaintiff requested an extensive search encompassing an enormous amount of material. The record shows that the agency began searching for responsive records shortly after receiving the request, and made its first production of

documents only three months later.  Craig Decl. ¶¶ 33, 40.

"[I]n view of the well-publicized problems created by the

statute's . . . time limit[] for processing FOIA requests and

appeals, the [agency's] delay alone cannot be said to indicate

an absence of good faith." *Goland*, 607 F.2d at 355.  Any delay

in the response is not grounds for denying the EPA's motion for

summary judgment. *AFGE Local 812 v. Broad. Bd. of Governors*,

711 F. Supp. 2d 139, 148 (D.D.C. 2010).

Next, Plaintiff objects to the EPA's decision not to search

its Office of Science Policy, Office of Science Advisor, Science

Advisory Board, and Regional Offices.  Pl.'s Objs. at 9-10.  He

also objects to the EPA's decision to search the files of only

certain employees, and not others, at the Agency's facility in

Research Triangle Park, North Carolina. *Id.* Plaintiff's claims

appear to rest on twenty four records provided by EPA.  See

Pl.'s Suppl. 7(h) Statement Exs. H-EE.  All of these records are

email chains or portions of email chains which include an

employee from one of the above mentioned offices. *Id.*

Plaintiff argues that the existence of these emails proves that

the EPA's search was inadequate.

When a FOIA request "does not specify the locations in

which an agency should search, the agency has discretion to

confine its inquiry . . . if additional searches are unlikely to

produce any marginal return." *Campbell v. U.S. Dep't of*

*Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Truesdale v. U.S. Dep't of Justice*, 803 F. Supp. 2d 44, 51 (D.D.C. 2011) (agency is "under no obligation to search every system of records which might conceivably hold responsive records.")  Nonetheless, "an agency 'cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'"  Campbell, 164 F.3d at 28 (quoting *Oglesby*, 920 F.2d at 68).

Here, the EPA did not search only one database – hundreds of employees in well over a dozen different offices and sub-offices searched their files.  Craig Decl. ¶¶ 23-32; Suppl. Craig Decl. ¶¶ 8-19.  The agency declarations explain in detail why those offices and individuals were likely to have responsive information to Plaintiff's request.  *Id.*  They also explain in detail why the Office of Science Policy, Office of the Science Advisor, Science Advisory Board, and Regional Offices were *unlikely* to have responsive materials:  although they all do work that relates in some way to climate change and greenhouse gases, these offices were not directly involved in any portion of the Endangerment Finding or the underlying IPCC reports.  Suppl. Craig Decl. ¶¶ 20-26; Def.'s Reply in Support of Mot. Summ. J. at 8-12.  The Court agrees with the Magistrate Judge that the supporting affidavits are sufficiently detailed and

non-conclusory on this issue to warrant a grant of summary judgment.

The handful of records plaintiff identifies do not raise a genuine issue of material fact as to whether the EPA failed "to follow through on obvious leads" in the retrieved records – *e.g.*, clear references to other relevant documents, files, or individuals which were not disclosed. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 324 (D.C. Cir. 1999) (citing *Campbell*, 164 F.3d at 28). The documents Plaintiff cites are principally long email strings involving dozens of individuals, including multiple people who <u>were</u> included in EPA's search for responsive documents. See Pl.'s Suppl. 7(h) Statement Exs. H-EE; Def.'s Suppl. Reply to Pl.'s Suppl. 7(h) Statement at 4-8. As the Agency points out, "[g]iven that 140 EPA staff members searched and identified 19,000 potentially responsive records, a few individuals who were not reasonably likely to possess responsive records may nevertheless appear in responsive records due to their communication with a staff member who was reasonably likely to possess responsive records." Def.'s Suppl. Reply to Pl.'s Suppl. 7(h) Statement at 7. Notably, Plaintiff does not point to anything within the emails that suggests the existence of documents that the EPA could not have located without expanding the scope of its search. Rather, he seems to argue that the inclusion of people from other offices in the

email chains must mean the EPA did not conduct an adequate search.[3] Pl.'s Objs. at 9-10. The Court disagrees. The fact that a few EPA employees who were not instructed to search their files were involved in a total of twenty four email chains (among nearly 13,000 documents produced) is insufficient, without more, to raise a "substantial doubt" about the adequacy of the search that was performed.

Accordingly, the Court accepts the recommendation from the Magistrate Judge with respect to these remaining objections to the adequacy of the search.

The Court will also address at this juncture Plaintiff's Motion to Supplement the Summary Judgment Record, filed after briefing on the objections was complete. Plaintiff seeks to supplement the record with correspondence between the U.S. House of Representatives Committee on Science, Space and Technology and the EPA regarding allegations that then-Administrator Lisa P. Jackson used "alias email accounts" to conduct official

---

[3] Plaintiff provides slightly more detailed argument with respect to four emails including employees from EPA's regional offices which, he claims, indicate these offices' involvement in the Endangerment Finding. Pl.'s Objections at 10; Suppl. 7(h) Statement at 6; Exs. S-V. The Agency responds, however, that these emails were only included "as a result of Plaintiff's refusal to narrow the scope" of his FOIA request subsection F(1)(b), which resulted in collection of "a voluminous amount of records that were" technically responsive to Plaintiff's request, but were "unrelated to the review of the IPCC reports, the Endangerment Finding, or climate models." Reply to Suppl. 7(h) Statement at 5, Craig. Decl. ¶ 20.

business.  Mot. to Supplement at 2.  Plaintiff argues that it is
unclear whether the EPA searched these alleged alias email
accounts in responding to his FOIA request, which further
undermines the adequacy of the search.  *Id.* at 3.  The EPA
opposes the motion, arguing that the letters Plaintiff seeks to
add do not contain admissible evidence.  The Agency also argues
that the letters do not undermine the adequacy of the search.
Def.'s Opp'n to Mot. to Supplement.  Specifically, Defendant
responds that Administrator Jackson has two email addresses, an
official address and an internal address, and that the
declarations provided by the EPA consistently demonstrate that
both were searched in response to Plaintiff's FOIA request.  *Id.*
at 2 (collecting citations from the Craig Declarations).  The
EPA also attaches to its Opposition a letter from the Agency to
the House Committee on Science, Space and Technology which
provides the same explanation.  *Id.* Ex. 1.

Plaintiff's motion to supplement, and the exhibits attached
to it, do not create a genuine issue of material fact.  In the
face of detailed agency declarations to the contrary, Plaintiff
has provided nothing beyond pure speculation to support his
claims.  *See SafeCard Servs., Inc. v. SEC*, 926 F.2d at 1200
(agency affidavits or declarations are accorded "a presumption
of good faith, which cannot be rebutted by purely speculative
claims about the existence and discoverability of other

documents") (internal quotation marks omitted).  Accordingly,
Plaintiff's Motion to Supplement the Record is **DENIED**.  To the
extent Plaintiff requests discovery on this issue, the request
is likewise denied.

> B. **FOIA Exemption 5**

The EPA withheld documents pursuant to three privileges
encompassed within Exemption 5:  deliberative process, attorney
client, and attorney work product.  The Magistrate Judge
recommends granting summary judgment with respect to the
withholdings pursuant to deliberative process and attorney work
product but denying summary judgment for the documents withheld
pursuant to the attorney client privilege.  R&R 25-36.  Each
party objects to the portion of the Report and Recommendation
not in its favor.

> 1. <u>Deliberative Process Privilege</u>

The EPA has withheld from disclosure three categories of
documents pursuant to the deliberative process privilege: (1)
email deliberations and draft comments on the IPCC reports; (2)
internal review, e-mails and drafts of the Endangerment Finding;
and (3) briefing materials and talking points about issues
related to the Endangerment Finding and the University of East
Anglia's emails relating to the IPCC reports.  The Magistrate
Judge agreed that these records are protected from disclosure by
Exemption 5's deliberative process privilege.  *Id.* at 26-28.

Plaintiff has properly objected to only the first category.[4]  He

contends that the documents related to the IPCC reports were not

"predecisional" as required under Exemption 5 because "they did

not relate to formulation of policy by a U.S. government agency.

Rather, the records . . . were the product of a multi-nation,

'peer review' exercise, which culminated in a report on the

climate issued by an international body."  Pl.'s Objs. at 11.

EPA responds that the decision at issue was the "U.S.

Government's official comments on the IPCC assessment reports."

Def.'s Opp'n to Pl.'s Objs. at 9.  The EPA explains that the

government was "required to send one integrated set of comments

through its focal points, the U.S. State Department and the U.S.

Office of Science and Technology Policy.  EPA was a key

participant in the U.S. Government's official review process

and, in this role, engaged in internal as well as intra-agency

---

[4] Plaintiff only mentions the other two categories in a single
footnote in his opening brief and a single footnote in his
reply.  Pl.'s Objs. at 11, n.4; Pl.'s Reply in Support of Objs.
at 9, n.7.  In those footnotes, he states only that his
arguments are set forth in his opposition to EPA's motion to
summary judgment.  These cursory references, which merely refer
the reader to arguments already made to and considered by the
Magistrate Judge, are not "properly objected to" and are
therefore not entitled to de novo review.  See *Morgan v. Astrue*,
2009 U.S. Dist. LEXIS 101092, *7-10 (collecting cases); see also
*Potter*, 558 F.3d at 553 (Williams, J. concurring) ("[J]udges are
not like pigs, hunting for truffles buried in briefs.")
(citation omitted); *Hutchins*, 188 F.3d at 539 n.3 (D.C. Cir.
1999) (court need not consider cursory arguments made only in a
footnote).  As the Court finds no clear error or manifest
injustice regarding these withholdings in the Report and
Recommendation, the Court will accept her recommendations.

deliberations in the form of emails and draft comments to develop the U.S. government's position." *Id.* at 8; Craig Decl. ¶¶ 69-70.

The Court finds that the documents are properly withheld under the deliberative process privilege. This privilege "reflect[s] the legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl because the full and frank exchange on legal or policy matters would be impossible." *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (internal quotation marks omitted). The fact that the decision-making activity did not relate to a particular EPA policy decision does not remove the documents from the protection of Exemption 5.

In *Judicial Watch v. Dep't of Energy*, 412 F.3d 125 (D.C. Cir. 2005), this Circuit considered whether the deliberative process privilege could shield records involving the National Energy Policy Development Group ("NEPDG"), an office which President George W. Bush established for the purpose of developing a national energy policy. The Circuit deemed it "inconceivable" that the documents would not be protected by Exemption 5, because the exemption protects all of the "decision-making processes of the Executive Branch," whether the decision results in agency policy or Administration policy. *Id.*

at 130. "That the President, rather than an agency, initiated the policy development process is of no moment; what matters is whether a document will expose the pre-decisional and deliberative processes of the Executive Branch." *Id.* at 131.

In this case, the deliberative process involved is the U.S. Government's official policy position regarding international reports of global climate change. Craig Decl. ¶¶ 7-8, 69-70. The IPCC assessments are clearly much more than purely scientific findings, as Plaintiff suggests. As the EPA explains, the IPCC "provide[s] a comprehensive and objective assessment of the state of knowledge on climate change and its potential environmental and socio-economic impacts." *Id.* ¶ 7. It not only assesses "the physical scientific aspects of the climate system and climate change," but also the "vulnerability of socio-economic and natural systems to climate change, negative and positive impacts of climate change, and options for adapting to it," including "mitigating climate change through limiting or preventing [greenhouse gas] emissions." *Id.* ¶ 8. The State Department and the U.S. Office of Science and Technology Policy led the development of the Government's official comments responding to the IPCC report. *Id.* ¶¶ 69-70. The mandate of the Office of Science and Technology is to "advise the President and others within the Executive Office of the President on the effects of science and technology on

domestic and international affairs . . . to lead interagency
efforts to develop and implement sound science and technology
policies and budgets, and to work with . . . other nations
toward this end." *The White House*,
http://www.whitehouse.gov/administration/eop/ostp/about (last
visited September 20, 2013). Although the EPA may not have
initiated the policy development process, there can be no
serious dispute that the comments relate to the formulation of
climate change policy by the Executive Branch. Accordingly, the
email deliberations and draft comments on the IPCC reports are
protected by the deliberative process privilege.

The Court also rejects Plaintiff's objection to the
Magistrate Judge's recommendation that the agency met its
obligation to detail whether segregable factual content could
have been disclosed. Pl.'s Objections 4-5, 12-13. "Agencies
are entitled to a presumption that they complied with the
obligation to disclose reasonably segregable material," which
must be overcome by some "quantum of evidence" by the requester.
*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir.
2007). "[A]n agency may satisfy its segregability obligations
by (1) providing a *Vaughn* index that adequately describes each
withheld document [or portion of a document] and the exemption
under which it was withheld; and (2) submitting a declaration
attesting that the agency released all segregable material."

*Nat'l Security Counselors v. CIA*, Case Nos. 11-443 et al., 2013
U.S. Dist. LEXIS 115184, *286 (D.D.C. Aug. 15, 2013) (citing
*Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008);
*Johnson*, 310 F.3d at 776).  The Court agrees with the Magistrate
Judge that the EPA has met its burden.  Contrary to Plaintiff's
assertion that the agency's *Vaughn* index is inadequate, *see*
Pl.'s Objs. at 4-5, 12, the Court finds the agency provided a
comprehensive sample *Vaughn* index, which describes with
specificity each document or partial document withheld,
including its factual content, and explains the reason for
asserting the exemption under which it was withheld.  *See, e.g.*,
Craig Decl. Ex. BB (Doc 21-4, p. 143 of 278) (EPA-27, describing
in detail slide presentation containing analysis for draft
comments to IPCC report, and explaining how it related to
process of developing comments to the report); Ex. CC (Doc. 21-
5, p. 5 of 141) (EPA-207, describing email chain discussing form
of comments to IPCC report before they were finalized, including
who sent and received emails).  In addition, Ms. Craig submitted
an affidavit attesting that EPA released all segregable, non-
exempt material.  Craig Decl. ¶¶ 37, 66, 73, 79, 82, 86, 89.
The combination of the *Vaughn* index and the agency affidavits
are "sufficient to fulfill the agency's obligation to show with
reasonable specificity why [the] document[s] cannot be further
segregated."  *Johnson*, 310 F.3d at 776 (citations omitted).

## 2. Attorney Client Privilege

EPA has withheld portions of approximately seventeen records from disclosure pursuant to the attorney client privilege.  Def.'s Objs. at 2 n.1, Pl.'s Response to Def.'s Objs. at 2-3, Def.'s Reply in Support of Objs. at 2 n.1.[5]  The Magistrate Judge recommends that the Court deny EPA's summary judgment motion on this issue because the EPA has not demonstrated that the communications were made in confidence. R&R at 33.  Defendant objects, asserting that it has properly invoked the attorney-client privilege.

In the context of Exemption 5, the attorney-client privilege "functions to protect communications between government attorneys and client agencies or departments."  *In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998).  Where a client is an organization, including a government organization, the

---

[5] The number of records withheld under this privilege has been the subject of some dispute due to mistakes in coding in EPA's database, and has been variously represented as low as 14 and as high as 18.  Def.'s Objs. at 1 n.1; Def.'s Reply in Support of Objs. at 2.  While this is obviously less than ideal, it appears to be a numbers error only. The records were all partially withheld, and therefore produced to Plaintiff in part and redacted in part.  Def's Objs. at Ex. 1; Pl.'s Opp'n to Def.'s Objs. at 2, Exs. 1-4. The redacted records produced "unambiguously reflected that the Agency was asserting a claim of attorney-client privilege."  Def.'s Reply in Support of Objs. at 2, n.1.  Although the errors are unfortunate, the Court cannot agree with Plaintiff that they "cast doubt on the validity of Defendant's account of how it gathered, reviewed and processed all responsive records."  Pl.'s Opp'n to Def.'s Objs. at 3.

privilege extends "no further than among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)(quoting *Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 253 n.24 (D.C. Cir. 1977)). The exemplar document listed in the Agency affidavits is described as a communication between an EPA attorney and "CCD staff . . . including EPA staff members who were working on the Endangerment Finding." Craig Decl. ¶ 80; *see also* Suppl. Craig Decl. ¶ 36 (communication was between attorney and "her clients in the CCD. The communication was confidential, shared only with those with a need-to-know, and provides legal advice based on the information provided by her clients. This communication was not circulated outside the Agency.")

The Plaintiff maintains that the EPA's representations do not satisfy its burden of establishing that the records are properly withheld because the Agency has failed to establish that the communications were confidential when created or have remained confidential since. Pl.'s Opp'n to Def.'s Objs. at 4-5 (noting that the declaration's "ambiguous use of 'including' ... could potentially refer to recipients in addition to EPA employees working on the Endangerment Finding."). In a related argument, Plaintiff claims that the agency has not provided

28

sufficient information about the responsibilities of the staff to which the declarations refer for the Court to determine whether the staff who received the document are limited to those with a need-to-know. *Id.* at 6.

The Court agrees with Plaintiff and with the Magistrate that the declarations are too conclusory to grant summary judgment to the Agency. The EPA has not provided information which clearly delineates either (1) the individuals who received the communication, or (2) whether those individuals, by virtue of their responsibilities, "are authorized to act or speak for the organization in relation to the subject matter of the communication." *Mead Data Cent., Inc.*, 566 F.2d at 253 n.24. Accordingly, the EPA must either disclose the records withheld pursuant to the attorney-client privilege or, in the alternative, indicate in sufficient detail why withholding is proper.

### 3. Work Product Doctrine

The Magistrate Judge recommends that the EPA's motion for summary judgment be granted with respect to its withholding of fourteen documents under the work product doctrine. R&R at 34-36. Plaintiff objects, arguing that the exemplar document, EPA-368, that EPA submitted in support of its withholding, "does not in any way suggest that Defendant's attorneys were, in fact, preparing for litigation." Pl.'s Objs. at 14. Rather, he

argues that "it is not clear whether the attorneys were assisting Defendant in preparing an explanation of the agency's legal obligations for public consumption or, as Defendant contends, preparing for litigation," and states that the document must be reviewed *in camera* in order to make a determination. *Id.* Defendant responds that the circumstances surrounding the preparation of the document make clear that it was prepared in anticipation of litigation. The exemplar document is an email written by an EPA attorney, and sent to EPA staff members working on the Endangerment Finding. Craig Decl. ¶ 83. It was created on November 19, 2009, after the proposed Endangerment Finding was issued and the comment period had closed, but before the final Endangerment Finding was signed by the Administrator. Suppl. Craig Decl. ¶¶ 37-38. During the comment period, the EPA received more than 380,000 comments, many of which strongly opposed the Finding. *Id.* ¶ 37. Because of the strong opposition to the proposed Finding, the agency had ample reason to anticipate litigation. *Id.* Accordingly, the EPA attorney provided "his edits and revisions to the Response to Comments document of the Endangerment Finding in anticipation of the litigation." *Id.*

In assessing whether the proponent of the work product doctrine has carried its burden to show a document is protected, the relevant inquiry is "whether, in light of the nature of the

document and the factual situation in the particular case, the
document can fairly be said to have been prepared . . . because
of the prospect of litigation." *EEOC v. Lutheran Soc. Servs.*,
186 F.3d 959, 968 (D.C. Cir. 1999).  Although the agency need
not have a specific claim in mind when preparing the documents,
there must exist some articulable claim that is likely to lead
to litigation in order to qualify the documents as work product.
*Coastal States Gas Corp.*, 617 F.2d at 865.  As another judge on
this Court recently observed:

> The Circuit has drawn a line between neutral, objective
> analyses of agency regulations and more pointed documents
> that recommend how to proceed further with specific
> investigations or advise the agency of the types of legal
> challenges likely to be mounted against a proposed program,
> potential defenses available to the agency, and likely
> outcome.  Neutral, objective analysis is like an agency
> manual, fleshing out the meaning of the law, and thus is
> not prepared in anticipation of litigation.  More pointed
> advice, however, anticipates litigation.

*Am. Immigration Council*, 905 F. Supp. 2d 206, 221-22 (D.D.C.
2012) (citations and quotation marks omitted).

The Court agrees with the Magistrate Judge that the
documents were properly withheld under the work product
doctrine.  The agency affidavits set forth, in a detailed,
consistent, and non-conclusory manner, the circumstances under
which the exemplar document was prepared – specifically, to help
the EPA prepare its response to a flood of comments attacking
the proposed Endangerment Finding. Craig Decl. ¶ 83; Suppl.

Craig Decl. ¶¶ 37-38.  In such a situation, the Agency's
response to comments is the type of document that clearly
anticipates legal challenges to the Agency's finding and seeks
to pre-emptively defend against them by crafting the strongest
possible counter arguments in the Response to Comments.  *Am.
Immigration Council*, 905 F. Supp. 2d at 221-22.  Accordingly,
the EPA has met its burden to show that the exemplar document
falls within the work-product doctrine.  As a result, *in camera*
inspection of the email is unnecessary.  *See Elec. Privacy Info.
Center v. U.S. Dep't of Justice*, 584 F. Supp. 2d 65, 83 (D.D.C.
2008) (finding in-camera review appropriate where agency
affidavits in support of claim of exemption were insufficiently
detailed); *Mehl v. EPA*, 797 F. Supp. 43, 46 (D.D.C. 1992) (in-
camera review warranted because publicly available report
describing the documents contradicted the agency's affidavit
describing the same documents).

    C. **FOIA Exemption 6**

Plaintiff concedes that the EPA's withholding of cell phone
numbers, home phone numbers, home addresses, medical
information, and personal email addresses is proper under
Exemption 6.  Pl.'s Opp'n to Mot. Summ. J. at 30-32; Pl.'s Objs.
at 15.  He challenges only EPA's withholding of (1) the official
internal email address of then-EPA Administrator Lisa P.
Jackson, and (2) the official email addresses of staff members

within the Executive Office of the President ("EOP"). Pl.'s Opp'n to Mot. Summ. J. at 30-32; Pl.'s Objs. at 15; *see* Suppl. Craig Decl. ¶ 39. The Magistrate Judge recommends granting summary judgment to the EPA regarding these withholdings. The Court agrees.

Exemption 6 allows an agency to withhold personal identifying information, such as email addresses, if disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600 (1982). The EPA has proffered a substantial privacy interest at stake in disclosing the official internal email address of the EPA Administrator and the work email address of employees at the EOP: these few individuals have "a significant personal interest in preventing the burden of unsolicited emails and harassment." Suppl. Craig Decl. ¶ 40. Plaintiff does not dispute this privacy interest; rather, he claims that the public interest in disclosure outweighs any privacy interest at stake. Specifically, he claims that "the work email addresses are the only way for Plaintiff to identify which government offices and agencies were involved in the relevant events." Pl.'s Objs. 15.

Plaintiff's claim is without merit for two reasons. First, the *Vaughn* index clearly states the identity of individuals – including the office or agency where they work – whose email

addresses were redacted. *See, e.g.*, Craig Decl. Ex. CC at EPA2-4494 (p. 70-71) (stating that redactions "relate to personal contact information of White House employees"). Second, EPA only redacted email addresses for the EPA Administrator and individuals who work at the EOP; their names have been disclosed, and, more important, the work emails of employees from all other agencies have been disclosed. Therefore, because Plaintiff knows that redacted email addresses must belong to the former Administrator, who he knows by name, or to employees at the EOP, he can identify exactly which government offices and agencies were involved. Accordingly, the Court concludes that disclosure of the email address would not "shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994) (citations and internal quotation marks omitted). Plaintiff's objection is denied.

D. **Publicly Available Records**

The Magistrate Judge recommended that the Court find that the EPA discharged its duty under FOIA by directing Plaintiff to publicly available documents in response to Requests A(2)(a), A(4)(a), E(1)(A), and F(1)(c). Pl.'s Objs. at 5; Craig Decl. Ex. O. The requests seek documents "on which EPA relie[d]" or documents reflecting "EPA's analysis" regarding certain

statements in EPA's Response to Comments document for the
Endangerment Finding. Craig Decl. Ex. A. The EPA responded
that these documents are available in the record for the
Endangerment Finding ("Record"), which contains the documents on
which EPA relied for the Finding. *Id.* Ex. O. The Agency
informed Plaintiff that the Record is available in several
places on line, as well as at the EPA docket office in
Washington D.C. *Id.*

Plaintiff concedes that an agency may direct a FOIA
requester to materials that have been previously published or
made available by the agency instead of producing them again.
However, he claims that the EPA had an obligation to direct him
to the materials within the Record which are specifically
responsive to his request. Pl.'s Objs. at 5-6. The Court
disagrees. As this Circuit has made clear, when an agency has
provided an alternative form of access, it has satisfied its
requirement under FOIA to make records available to the public.
*Oglesby*, 920 F.2d at 70; *see also U.S. Dep't of Justice v. Tax
Analysts*, 492 U.S. 136, 151-53 (1989) (discussing the public
disclosure provisions of 5 U.S.C. § 552(a)). While an agency
may not send the FOIA requester on a "scavenger hunt," *Oglesby*,
920 F.2d at 70, it may fulfill its obligations by, inter alia,
making records available in a reading room, posting the
information at a customshouse, pointing the requestor to

previously published reports containing copies of records, or
making available daily compilations of newspaper and magazine
articles in an agency's public document room.  *See id.*
(collecting cases).  Plaintiff has cited no cases, and the Court
is aware of none, that impose the additional requirement that
the agency then search through those available records to
pinpoint the specific documents of most use to the requestor.
The EPA has fulfilled its obligation by directing plaintiff to
publicly available records which specifically relate to the
Endangerment Finding and are responsive to four subsections of
his request.  The Court will therefore accept the Magistrate
Judge's recommendation with respect to this objection.

E. **Plaintiff's General Arguments**

Finally, the Plaintiff raises a series of general
objections to the R&R which can only be characterized as
wholesale attacks on the Magistrate Judge's approach to the
facts and the law, accusing the Magistrate Judge of acting in a
manner biased towards Defendant and against Plaintiff.  Pl.'s
Objs. at 3-5.  Plaintiff also implies that the Magistrate Judge
failed to carefully analyze the *Vaughn* index.  *Id.*  The Court
finds these claims puzzling in light of Plaintiff's strenuous
defense of the Magistrate Judge's reasoning and analysis in the
portions of her Report & Recommendation which recommend denying
EPA's Motion for Summary Judgment.  *See generally* Pl.'s Opp'n to

Def.'s Objs.  More to the point, such indiscriminate objections
are not properly before the Court.  *See supra* Sections II.B,
III.B.1, and cases cited therein.  Where Plaintiff has pointed
to a specific error in the Magistrate Judge's analysis, the
Court has addressed it, as contemplated by Federal Rule of Civil
Procedure 72.2(b) and Local Rule 72.3(b). However, "providing a
complete *de novo* determination where only a general objection to
the report is offered would undermine the efficiency the
magistrate system was meant to contribute to the judicial
process." *Goney v. Clark*, 749 F.2d 5, 6 (3d Cir. 1984).
Accordingly, as the Court finds no clear error or manifest
injustice in the Report and Recommendation with respect to these
claims, Plaintiff's objections are overruled.

## IV.  CONCLUSION

    For the foregoing reasons, the Court accepts the Magistrate
Judge's recommendations regarding (1) the adequacy of the search
for the subsections of the FOIA request encompassed in EPA's
phased searches; (2) EPA's withholding of documents under
Exemption 5's deliberative process privilege and the work
product doctrine; (3) EPA's withholding of documents under
Exemption 6; (4) EPA's segregability determinations; and (5)
EPA's approach to publicly available documents responsive to
Plaintiff's request.  No further action is required on these
matters.  The Court accepts the Magistrate Judge's

recommendation regarding EPA's withholding of documents under the attorney-client privilege; accordingly, EPA must either disclose those documents or file supplemental submissions indicating in sufficient detail why withholding is proper. The Court rejects the Magistrate Judge's recommendation with respect to the adequacy of the search for certain subsections of the FOIA request not subject to the EPA's phased review process, specifically subsections A(4)(b),(c), A(5)(a),(b),(c),(d),(e), B(1)(a), D(1)(a),(b), E(2)(a) and (b), and F(1)(a). The Agency shall either conduct another search for documents responsive to these portions of the request, or in the alternative prove that its prior searches meet the adequacy standard. Finally, Plaintiff's Motion to Supplement the Record is denied. An appropriate order accompanies this Memorandum Opinion.

**Signed:**    **Emmet G. Sullivan**
              **United States District Judge**
              **September 30, 2013**