UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
**SEAN D. REYES,**            )
Attorney General, State of Utah,[1] )
                              )
         **Plaintiff,**       )
                              )
v.                            ) Civil No. 10-2030 (EGS/DAR)
                              )
**UNITED STATES ENVIRONMENTAL** )
**PROTECTION AGENCY,**        )
                              )
         **Defendant.**       )
_____)

## MEMORANDUM OPINION

Pending before the Court is [46] the U.S. Environmental Protection Agency's ("EPA") Renewed Motion for Summary Judgment. Upon consideration of the motion, response, reply, the relevant caselaw and the record as a whole, and for the reasons that follow, the Renewed Motion is **GRANTED**.

I.   BACKGROUND

This matter arises from Plaintiff's Freedom of Information Act ("FOIA") request to EPA seeking information on the EPA's Endangerment Finding, which found that certain greenhouse gases taken in combination endanger the public health and welfare. The request was lengthy, consisting of fourteen pages and thirty-seven subparts, and broad, seeking a tremendous amount of

---

[1] By operation of Federal Rule of Civil Procedure 25(d), Sean D. Reyes, the Attorney General of the State of Utah, has been automatically substituted for Mark Shurtleff.

information about the finding. See Compl., Ex. A. The EPA ultimately located about 13,000 responsive records, of which approximately 8,200 were released in part, 4,445 were released in full, and 342 were withheld in full. *See* Decl. of Elizabeth Craig ("Craig Decl.") ¶ 61.

In September 2013, the Court issued a Memorandum Opinion granting in part and denying in part the EPA's Motion for Summary Judgment. *Shurtleff v. EPA*, No. 10-2030, 2013 U.S. Dist. LEXIS 140433 (D.D.C. Sept. 30, 2013) ("2013 Opinion"). Familiarity with the 2013 Opinion is assumed. With regard to the partial denial of the motion, the Court directed EPA (1) either to disclose documents withheld under the attorney-client privilege or file supplemental submissions indicating in sufficient detail why withholding is proper; and (2) either to conduct another search for documents responsive to subparts A(4)(b),(c), A(5)(a),(b),(c),(d),(e), B(1)(a), D(1)(a),(b), E(2)(a),(b), and F(1)(a) of Plaintiff's FOIA request, or, in the alternative, prove that its prior searches meet the adequacy standard. *Id.* at *45.

Subsequently, EPA filed the instant Renewed Motion for Summary Judgment. In support of its Renewed Motion, the EPA relies upon the Second Supplemental Declaration of Elizabeth Craig ("Second Supp. Craig Decl."). Craig is the Director of the Climate Protection Partnership Division of the Office of

Atmospheric Programs in the EPA's Office of Air and Radiation, and former Acting Director of the Office of Atmospheric Programs. Second Supp. Craig Decl. ¶ 1. The EPA's Renewed Motion is ripe for review.

## II. LEGAL STANDARD

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In a FOIA case, the burden of proof is on the agency to demonstrate that it has fully discharged its obligations under the FOIA. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (citations omitted).

## III. DISCUSSION

### A. Attorney-Client Privilege

FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

> The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services. The privilege also protects communications from attorneys to their clients if the communications "rest on confidential information obtained from the client." In the governmental

3

> context, the "client" may be the agency and the attorney may be an agency lawyer.

*Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)(citing *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977)). The agency bears the burden to show that information exchanged between an agency and its attorneys is confidential. Privilege only extends to "those members of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication." *Mead Data*, 566 F.2d at 253 n.24.

The Court denied EPA's first Motion for Summary Judgment as to records withheld pursuant to the attorney client privilege for two reasons: (1) EPA failed to specify who received the documents, thus it did not establish the communications were confidential; and (2) EPA failed to explain the recipients' responsibilities, thus, it did not establish that the recipients were authorized to act or speak for the government in relation to the subject matter of the communication. *Shurtleff*, 2013 U.S. Dist. LEXIS 140433, at *34-35. It directed EPA to either disclose the records, or indicate in sufficient detail why withholding is proper. *Id*.

Elizabeth Craig's Second Supplemental Declaration addresses each of the nine documents withheld or partially withheld

4

pursuant to attorney-client privilege.² *See* Second Supp. Craig Decl. ¶¶ 5, 11-18. Additionally, Ms. Craig provides the redacted documents as Exhibit A to her Declaration. *Id.* Ex. A. The documents are email chains between agency counsel and other agency staff.

Plaintiff claims the EPA fails to establish that the documents contained legal advice. Opp'n to Renewed Mot. at 9-10. The Court disagrees. While "[t]he privilege does not allow the withholding of documents simply because they are the product of an attorney-client relationship," *Mead Data*, 566 F.2d at 553, it does apply to communications "made for the purpose of securing primarily . . . an opinion on law." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (citation omitted). As the most recent Declaration explains, each document pertains to an

---

² EPA asserted attorney client privilege as to fourteen documents; however, as it pointed out in its Renewed Motion, five of the fourteen were also withheld on the basis of either deliberative process or attorney work product privilege. *See* Renewed Mot. at 4 n.1. Because the Court upheld EPA's application of the deliberative process and work product privilege in the 2013 Opinion, EPA argues, these five documents have already been deemed properly withheld. *Id.* Plaintiff concedes this issue by failing to address it in his opposition brief. "It is well established that if a [party] fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded." *Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) (citations omitted). Accordingly, since the Court already concluded these records were properly withheld under FOIA, it need not separately determine whether they could also be withheld on an alternative basis. *See, e.g.*, *Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 456 (D.C. Cir. 2007).

5

issue for which EPA sought the legal advice of its lawyers: (1) reviewing the EPA's draft response to public comments on the Endangerment Finding in order to provide legal advice on how to respond to certain comments; *see* EPA2-6968, EPA2-2413, EPA-105; (2) requesting information from the client in order to provide legal interpretation and defense of the Endangerment Finding in response to questions from the White House, petitions for reconsideration, and congressional inquiries, *see* EPA2-3150, EPA2-4349, EPA2-7374, EPA2-7384; (3) reviewing agency solicitations and providing guidance on legal compliance before publication, *see* EPA2-6158; and (4) providing legal advice regarding then-unreleased air quality standards, resting on confidential information from client regarding then-ongoing development of standards, *see* EPA2-1076. *See generally* Second Supp. Craig Decl. ¶¶ 5, 11-18, Ex. A.

Plaintiff also claims that the EPA has not met its burden to demonstrate that the documents remained confidential. Opp'n to Renewed Mot. at 9. Again, the Court disagrees. The declaration and attachment provide the name, job title and responsibilities of the sender and recipient of each document. *See* Second Supp. Craig Decl. ¶¶ 5, 11-18, Ex. A. The senders and recipients were limited to EPA attorneys, scientists, analysts, support staff, or senior executives who were responsible for developing EPA's position on the underlying

environmental issues. *Id.* [3]  These representations satisfy EPA's burden to show the documents were limited to people "authorized to act or speak for the organization in relation to the subject matter of the communication."  *Mead Data*, 566 F.2d at 253, n.24.

Under FOIA, "[i]f a document contains exempt information, the agency must still release any reasonably segregable portion after deletion of the nondisclosable portions." *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (internal quotation marks and citation omitted).  Though not specifically raised by Plaintiff, the Court has "an affirmative duty to consider the segregability issue sua sponte." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The Court is satisfied that EPA has fulfilled this burden based on Ms. Craig's most recent Declaration.  She provides the redacted documents as attachments to her Declaration, and, more importantly, describes the information that was redacted or withheld in detail.

---

[3] One of the withheld documents involved a communication between EPA counsel and Counselor for Energy and Climate Change in the White House.  *See* Second Supp. Craig. Decl., Ex. A, EPA2-4349 (inquiry from White House to EPA attorney seeking legal guidance related to Endangerment Finding).  The Court agrees with EPA -- and plaintiff does not dispute -- that because the White House official "was seeking advice on a matter within the scope of her official duties and was authorized to act or speak for the Federal Government in relation to the subject matter of her communication with [the EPA attorney], the EPA's application of the attorney-client privilege to redact EPA 2-4349 was proper." Renewed Mot. at 5-6.

**B. Adequacy of the Search**

In response to a challenge to the adequacy of its search for requested records, "the agency may meet its burden by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'" *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (citations omitted). In addition, "[a]ny factual assertions contained in affidavits and other attachments in support of motions for summary judgment are accepted as true unless the nonmoving party submits affidavits or other documentary evidence contradicting those assertions." *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 148 (D.D.C. 2010) (citations omitted).

In the 2013 Opinion, the Court denied EPA's motion for summary judgment as to the adequacy of the search for documents responsive to the subparts of Plaintiff's FOIA request that did not appear to be included in EPA's three search phases: A(4)(b),(c), A(5)(a),(b),(c),(d),(e), B(1)(a), D(1)(a),(b), E(2)(a),(b), and F(1)(a). *Shurtleff*, 2013 U.S. Dist. LEXIS 140433, at *16-18 (noting that the Agency provided almost no details about searches for documents responsive to these subparts). Accordingly, the Court directed EPA to conduct new

8

searches or prove that its prior searches meet the adequacy standard. *Id.*

In a previous declaration by Elizabeth Craig, she explained that EPA held several planning meetings immediately after receiving plaintiff's FOIA request "to clarify and interpret the broad and ambiguous aspects of the 37-part FOIA request, identify relevant individuals throughout the Agency who may have responsive documents, and develop instructions for conducting the search." Supplemental Craig Decl. ¶ 17. During these planning meetings, it was determined that the Climate Change Division ("CCD") was the only office likely to have documents responsive to the subparts at issue in the Renewed Motion for Summary Judgment, because these subparts requested records pertaining to work being performed by CCD on the Endangerment Finding. *Id.*

In support of its Renewed Motion for Summary Judgment, the EPA submitted the Second Supplemental Declaration of Elizabeth Craig. The Declaration describes the specific steps taken in response to plaintiff's requests for the remaining subparts. EPA determined that it possessed no responsive documents with respect to several of plaintiff's requests, or that responsive documents were publicly available. Second Supp. Craig Decl. ¶¶ 20-27. With respect to other requests, the agency conducted

9

searches but found no responsive documents. *Id.* ¶¶ 28. Finally, EPA produced records as to other requests. *Id.* ¶¶ 29-33.

Plaintiff raises two arguments in response. First, he argues that EPA's decision not to conduct searches responsive to certain requests was inadequate. Opp'n to Renewed Mot. at 4. Second, he argues that the searches conducted failed to adequately explain the methodology of the search and were unreasonably limited to certain offices and individuals. *Id.* The Court considers each in turn.

*1) No Search Conducted: Subparts A(4)(b),(c), A(5)(a)-(e), B(1)(a), and D(1)*

The EPA argues that it reasonably concluded it possessed no documents responsive to subparts A4(b),(c) and D(1) of plaintiff's request.[4] Subparts A4(b) and (c) sought information pertaining to any EPA "investigation" of the scientific credibility of reports prepared by the Intergovernmental Panel on Climate Change ("IPCC"). Second Supp. Craig Decl., Ex. B, FOIA Request at 5. The EPA's Climate Change Division considered the request and concluded it had no responsive records because

---

[4] In its Renewed Motion and supporting Declaration, EPA also explains the basis for its determination that it possessed no responsive information with respect to subparts A(5)(a)-(e) and B(1)(a). *See* Second Supp. Craig Decl. ¶¶ 22-25. Plaintiff failed to contest these arguments in his response. *See* Reply in Support of Renewed Mot. at 5. The Court will therefore treat any challenges to the adequacy of Defendant's search as to these subsections as conceded. *See Judicial Watch, Inc. v. U.S. Dep't of Hous. And Urban Dev.*, Case No. 12-1785, 2014 U.S. Dist. LEXIS 25882, at *14 n.5 (D.D.C. Feb. 28, 2014) (citations omitted).

EPA did not conduct an investigation of the scientific credibility of the reports. Second Supp. Craig Decl. ¶¶ 20-21. Subpart D(1)(a) sought raw temperature data developed by the United Kingdom's Hadley Centre. Because the EPA did not create, possess, or control the raw temperature data, it determined that it had no records responsive to subpart D(1)(a). *Id.* ¶¶ 26-27.

In his opposition, plaintiff argues that the Agency's interpretation of 4(b) and (c) was too narrow, and led to "the self-serving result that no search was even attempted." Opp'n to Renewed Mot. at 5. Plaintiff does not, however, explain the basis for his argument, or offer an alternative interpretation of his request. He also argues, perplexingly, that EPA's "decision to limit the FOIA request to what it created or currently possesses" was unreasonable with respect to subpart D(1). *Id.* Again, he does not explain the basis for his argument or indicate how EPA could produce documents it did not possess.

"The adequacy of an agency's search for responsive records 'is measured by the reasonableness of the effort in light of the specific request.'" *McKinley v. FDIC*, 807 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009)). An agency is not required to expend its limited resources on searches for which it is clear at the outset that no search will produce the records sought. *Sack v.*

11

*U.S. Dep't of Def.*, No. 12-1754, 2013 U.S. Dist. LEXIS 173317, at *22 (D.D.C. Dec. 9, 2013). The Court finds that the EPA's explanation, derived from multiple planning meetings by EPA and CCD staff to determine how to respond to Plaintiff's broad and complex request, demonstrates that EPA appropriately approached Plaintiff's requests, and that searches for documents that it never had or no longer possessed would be futile. "Where . . . the Government's declarations establish that a search would be futile . . . the reasonable search required by FOIA may be no search at all." *Amnesty Int'l USA v. CIA*, No. 07-Civ.-5435, 2008 U.S. Dist. LEXIS 47882, at *34 n.17 (S.D.N.Y. June 19, 2008).

> *2) Search Methodology, Offices and Individuals: Subparts D(1)(b), E(2)(a),(b), and F(1)(a)*

Ms. Craig's Second Supplemental Declaration explains that EPA searched for documents responsive to subparts D(1)(b) and E(2)(a)-(b). In subpart D(1)(b), Plaintiff requested documents showing how raw temperature data developed by the United Kingdom's Hadley Centre "were adjusted to create the HadCRUT data set . . . [including] specific calculations that were made in adjusting the data." Second Supp. Craig Decl., Ex. B, FOIA Request at 10. In subparts E(2)(a) and (b), Plaintiff requested documents regarding EPA's analysis of a study relating to temperature records ("Easterling and Wehner study"). *Id.* at 11.

During the agency's multiple planning meetings to determine how to respond to Plaintiff's FOIA request, only two individuals were identified who might possess any responsive records to D(1)(b), E(2)(a) or E(2)(b): CCD Climate Change Analysts Marcus Sarofim and James Samenow, the two employees responsible for the temperature record portions of the Endangerment Finding. Second Supp. Craig Decl. ¶¶ 28, 30. Dr. Sarofim and Mr. Samenow attended the planning meetings. *Id.* ¶ 30. Upon discussion with these individuals, it was determined that they had done no work with the raw Hadley Centre data or made any calculations to adjust them; they worked only with the fully processed data. *Id.* ¶ 28. Nevertheless, they searched their emails, calendar files, electronic files in their personal drives and on network drives, and paper files, using the search term "HadCRUT." They found no responsive records. *Id.* With respect to the Easterling and Wehner study, Sarofim and Samenow searched the same electronic and paper files using the search terms "Easterling" and "Wehner" and submitted responsive documents to the collection database. *Id.* ¶ 30.

Finally, in subpart F(1)(a), Plaintiff requested all communications between EPA employees and twelve federal experts who conducted peer review of the Endangerment Finding. Second Supp. Craig Decl. Ex. B, FOIA Request at 12. In determining how to respond to this portion of the request, EPA identified a very

13

similar FOIA request submitted just a few months earlier, for "the entire EPA Peer Review Record . . . detailing the peer review process conducted in connection with the Endangerment Finding." Second Suppl. Craig Decl. ¶ 32. In response to that request, EPA identified thirty one employees who might have responsive records, and these individuals searched all of their electronic and paper files for records related to the peer review process. *Id.* ¶ 33. Accordingly, EPA determined that a new search would not turn up any additional records and produced to Plaintiffs the records it had produced in response to the earlier FOIA request. *Id.* ¶ 32.

Plaintiff claims that EPA's searches were inadequate for a variety of reasons: lack of detail, unexplained methodology, and failure to search all relevant locations and/or the files of all relevant individuals. Opp'n to Renewed Mot. at 5-7. None of these claims are persuasive. Taken together, the Craig Declarations provide detailed descriptions of the EPA's search for documents responsive to subparts D(1)(b), E(2)(a),(b), F(1)(a), including the methodology used for determining how to respond to the FOIA request, the manner in which relevant individuals and offices were identified as possessing responsive documents and the reasons for such identification, the filing systems and files searched, and the search terms used. *See*, *e.g.*, Craig Decl. ¶¶ 17, 23-27, 29-30, 32; Supp. Craig Decl. ¶¶

14

13-15, 17, 19, Second Supp. Craig Decl. ¶¶ 28-33. The Declarations "describe in . . . detail what records were searched, by whom, and through what process." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (citation omitted). Moreover, plaintiff does not identify other files, search terms, documents, offices, or individuals which would likely possess responsive records to these subparts. Rather, he argues that "the EPA offers no evidence for the Court to conclude that **no** other departments within EPA possess documents or information responsive to the FOIA request." Opp'n to Renewed Mot. at 6 (emphasis in original). Plaintiff misunderstands the standard for adequacy of a search under FOIA. As this Circuit has made clear, "[t]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (per curiam).[5]

---

[5] The cases on which Plaintiff relies, *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009) and *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999), are easily distinguishable. *See* Opp'n to Renewed Mot. to Summ. J. 6. In *Defenders of Wildlife*, the agency declarations contained no explanation of what methods were used to conduct the searches, the rationale for searching the selected locations, or what files were searched. 623 F. Supp. 2d at 91-92. In *Valencia-Lucena*, the agency informed the requester that responsive records were likely located in a different office, but declined to search that office. 180 F.3d at 327.

Taken together, the detailed, non-conclusory affidavits submitted by Ms. Craig satisfy this standard of reasonableness.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment will be GRANTED. A separate order accompanies this Memorandum Opinion.

**SIGNED:   Emmet G. Sullivan**
**          United States District Judge**
**          June 13, 2014**